FILED

2018 FEB -6 PM 2: 14

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| Plaintiff, | ) | JUDGE  JUDGE GAUGHAN |
| v. | ) | CASE NO. 1:18 CR 61 |
| | ) | Title 18, Sections 1349, 1341, |
| RONDA HITE and | ) | 1343, 1028A(a)(1), and 2, |
| TIFFANY JONES, | ) | United States Code |
| Defendants. | ) | |

GENERAL ALLEGATIONS

At all times material herein:

1. The Social Security Act of 1935 initiated the Federal and State Unemployment Insurance System (hereinafter "UI"), which was designed to provide benefits to individuals out of work through no fault of their own. The purpose of the UI was to lessen the effects of unemployment through payments made directly to unemployed workers, thereby enabling said individuals to pay for the necessities of life, such as food, shelter and clothing, on a weekly basis while the individual sought employment. The UI program was administered by State Workforce Agencies (hereinafter "State UI Offices").

2. In order to receive benefits, a claimant must file a claim with the State UI Office. Claimants typically file claims online via an Internet website operated by the State UI Office, or

by telephone. Benefits are paid when a claimant is laid off due to a lack of work. So long as wages have been reported by an employer for the claimant, the State UI Office will pay benefits even though the employer may not have actually remitted or paid any payroll taxes to the State UI Office. If no payroll taxes were paid by the employer, the State UI Office subsequently attempts to collect the delinquent payroll taxes owed by the employer. Any such delinquency, however, does not affect a claimant's eligibility for benefits.

3. Once a claim is accepted, the State UI Office sends the UI benefits either weekly or bi-weekly to the claimant. Some State UI Offices utilize a debit card system in which a debit card is mailed to the address provided by the claimant. The claimant may use this debit card just as they would any other debit card. Some State UI Offices also permit a claimant to receive UI benefits through direct deposit.

4. On a weekly or bi-weekly basis, claimants must also complete a continued claim form, which is returned to the State UI Office. Alternatively, claimants may also certify their continued eligibility for benefits via the State UI Office website or by telephone. The purpose of the continued claim form is to verify that the individual is still unemployed and eligible for benefits. Once the form is received by the State UI Office, payment is authorized and benefits for that period are either loaded onto the debit card previously sent to the claimant, or the benefits are sent via direct deposit.

5. The amount of weekly UI benefits paid to a claimant is based on the claimant's prior earnings, as reported by the employer for a specified time period called the "base wage" period. The wage information is reported on a quarter-year basis by employers to the State UI Office on a standardized form referred to as the "Quarterly Wage and Withholding Report." The form contains blank spaces for the employer to enter information such as an employer's name,

address and State UI Office account number, as well as the names, Social Security account numbers and wages earned by each employee during the quarter. The reports are due shortly after the end of each calendar quarter.

6. Prior to submission of the employer's quarterly reports, the employer must first register with the State UI Office by submitting a document entitled, "Registration Form for Commercial Employers." This form provides information about the employer, including name, address, type of business, number of employees and other general information, and, in turn, causes the State UI Office to assign an account number to the employer.

7. On the application for benefits, State UI Offices specifically ask claimants whether they are receiving UI benefits from other states. Claimants are prohibited from simultaneously collecting UI benefits from more than one state. Claimants that become unemployed and qualify for UI benefits may file for UI benefits from a state other than that in which they reside, so long as wages have been reported in the state where the work was performed.

8. In a fictitious employer scheme, individuals involved with the execution of the scheme submit paperwork to the State UI Office registering a "fictitious" employer that does not actually exist and has never actually employed anyone. The paperwork submitted to the State UI Office falsely states that the employer employs numerous individuals and lists each employee's name, Social Security account number, and quarterly earnings. After the fictitious employer has been registered with the State UI Office and non-existent earnings are reported for several quarters, the purported "employees" file UI claims with the State UI Office claiming that they were laid off by the fictitious employer. Individuals engaged in a fictitious employer scheme often use the personal identifying information of individuals with no previous employment

history of reported wages to avoid potential conflicts with the fictitious employer "wages" that are submitted to the State UI Office.

9. A fictitious employer scheme comes to fruition when the State UI Office sends out a stream of UI benefits via direct deposit or to the debit cards issued to the purported laid-off workers. Once bank accounts are set up to receive the direct deposit of the funds, banks mail debit cards associated with those accounts to the accounts owners via the U.S. Postal Service. In a fictitious employer scheme, the address(es) to which the debit cards are directed are typically addresses under the control of, or have some connection to, the individuals executing the scheme.

COUNT 1
(Conspiracy to Commit Mail Fraud and Wire Fraud, 18 U.S.C. § 1349)

The Grand Jury charges:

10. Paragraphs 1 through 9 of the General Allegations are incorporated herein and realleged by reference.

11. Between in or about August 2015 and in about May 2017, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendants, RONDA HITE and TIFFANY JONES, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other to commit the following offenses against the United States, to wit:

   (a) to devise and intend to devise a scheme and artifice to defraud the Commonwealth of Kentucky Division of Unemployment Insurance ("KDUI"), and to obtain money by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to cause matters to be placed in any post office and authorized depository for mail matter to be sent and delivered by the U.S. Postal Service and private or commercial interstate carriers, in

4

violation of Title 18, United States Code, Section 1341 (Mail Fraud); and

      (b)    to devise and intend to devise a scheme and artifice to defraud the KDUI, and to obtain money by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause the transmission by means of wire communications in interstate commerce any writing, sign, signal, and picture for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

12.    It was part of the scheme and artifice to defraud that defendants HITE and JONES fraudulently obtained the personal identifying information (hereinafter "PII") of unsuspecting individuals for use in connection with the submission of fraudulent claims for unemployment insurance benefits.

13.    It was further part of the scheme and artifice to defraud that starting as early as in or about July 2015 and continuing until in or about July 2017, defendant HITE created State Unemployment Insurance accounts for two fictitious employers in Ohio and two fictitious employers in Alabama. False and fictitious information concerning the "businesses" were provided by HITE to the KDUI, including the existence of the business, the location, the number of employees, and the quarterly earnings of the employees. The names and other PII submitted for the purported "employees" were the names and other PII of the individuals who were completely unaware their PII was obtained and used by HITE and JONES.

14.    It was further part of the scheme and artifice to defraud that after reporting earnings for the purported "employees" of the fictitious employers for several quarters, defendant HITE filed and caused to be filed claims for unemployment benefits by "employees" who purportedly had been laid-off by the fictitious employers.

15. It was further part of the scheme and artifice to defraud that the KDUI processed initial claims for unemployment benefits on behalf of the purportedly laid-off "employees" and, after approving said initial claims, directed the banks or private companies responsible for administering payment of the unemployment benefits to deposit the benefits into bank accounts set up by the "claimants." As subsequent claims for unemployment insurance benefits were received and approved by the KDUI, the banks were directed to deposit additional UI benefits into the accounts.

16. It was further part of the scheme and artifice to defraud that defendants HITE and JONES caused the UI benefit debit cards associated with the bank accounts opened for the employees of the fictitious employers to be mailed to various addresses in the Northern District of Ohio, Eastern Division and elsewhere. The debit cards were subsequently collected by HITE and JONES and maintained at HITE's residence within the Northern District of Ohio and elsewhere.

17. It was further part of the scheme and artifice to defraud that HITE and JONES shared with each other the personal identifying information of individuals on behalf of whom they filed fraudulent unemployment insurance claims.

18. It was further part of the scheme and artifice to defraud that HITE and JONES checked the status of fraudulent claims filed by one another by accessing information from the KDUI online.

19. It was further part of the scheme and artifice to defraud that shortly after the unemployment benefits were deposited into the "claimants" accounts, defendants HITE and JONES used the debit cards at various ATM machines located throughout the Northern District of Ohio, Eastern Division and elsewhere to withdraw funds representing the fraudulently

6

obtained unemployment benefits paid to the purportedly "laid-off employees." Between in or about July 2015 and July 2017, approximately $140,270 in fraudulently claimed unemployment benefits were disbursed by the KDUI as a result of the scheme and artifice to defraud executed and attempted to be executed by HITE and JONES.

20. It was further part of the scheme and artifice to defraud that on or about April 14, 2017, a State Unemployment Insurance business account was registered with the KDUI by means of an interstate wire communication sent from Ohio to Kentucky via the Internet for a fictitious employer called "Nash Landscaping." Initial applications for the employees were submitted electronically via the Internet on or about April 30, 2017 and May 7, 2017. Claims for unemployment benefits by the purportedly laid-off employees of Nash Landscaping were submitted to the KDUI between in or about April 2017 and in or about May 2017. The KDUI did not pay out any unemployment insurance benefits to the fictitious claimants.

21. It was further part of the scheme and artifice to defraud that on or about May 19, 2017, a female contacted the KDUI to inquire about the status of unemployment insurance claims filed on behalf of fictitious employees for Nash Landscaping. A KDUI representative informed the female that a $500 "good faith" payment must be sent to the KDUI on behalf of Nash Landscaping before the claims could be paid out. On or about May 23, 2017, JONES mailed a $500 money order to the KDUI.

22. It was further part of the scheme and artifice to defraud that on or about May 23, 2017, JONES mailed to HITE an envelope including correspondence from the KDUI to Nash Landscaping dated April 17, 2017, which was attached to correspondence addressed to fictitious employees of Nash Landscaping on behalf of whom fraudulent unemployment insurance claims were filed. Handwritten markings on the correspondence included the name of a KDUI

7

representative and "500." It was further part of the scheme and artifice to defraud that on or about April 3, 2017, JONES mailed to HITE an envelope containing visa debit cards for six fictitious employees of Nash Landscaping on behalf of whom fraudulent unemployment insurance claims were filed.

23. It was further part of the scheme and artifice to defraud that on or about November 18, 2015, a State Unemployment Insurance business account was registered with the KDUI for a fictitious employer called "Kamitch Landscaping" by means of an interstate wire communication transmitted from Ohio to Kentucky. Initial applications for the employees were submitted electronically via the Internet on or about December 13, 2015 and January 8, 2016. Continued claim forms were submitted to the KDUI between in or about December 2015 and in or about July 2016. The KDUI paid out approximately $25,580 in unemployment insurance benefits to the fictitious claimants.

24. It was further part of the scheme and artifice to defraud that on or about August 3, 2016, a State Unemployment Insurance business account was registered with the KDUI for a fictitious employer called "P&S Janitorial Services" by means of an interstate wire communication transmitted from Ohio to Kentucky via the Internet. Initial applications for the employees were submitted electronically via the Internet between on or about August 28, 2016. Claims were submitted to the KDUI between in or about August 2016 and in or about April 2017. The KDUI paid out approximately $86,320 in unemployment insurance benefits to the fictitious claimants.

25. It was further part of the scheme and artifice to defraud that on or about July 9, 2015, a State Unemployment Insurance business account was registered with the KDUI for a fictitious employer called "Toni's Janitorial Service" by means of an interstate wire

8

communication transmitted from Ohio to Kentucky via the Internet. Initial applications for the employees were submitted electronically via the Internet on or about August 2, 2015. Claims were submitted to the KDUI between in or about August 2015 and in or about February 2016. The KDUI paid out approximately $32,370 in unemployment insurance benefits to the fictitious claimants.

26. As a result of the scheme and artifice executed and attempted to be executed by defendants HITE and JONES, the KDUI suffered a loss of approximately $140,270.

All in violation of Title 18, United States Code, Section 1349.

COUNTS 2 - 7
(Wire Fraud 18 U.S.C. §§ 1343 and 2)

The Grand Jury further charges:

27. Paragraphs 1 through 9 of the General Allegations and paragraphs 10 through 26 of Count 1 are incorporated herein and realleged by reference.

28. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, defendant RONDA HITE and TIFFANY JONES, having knowingly devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property, to wit: unemployment insurance benefits, by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, and attempting to do so, knowingly transmitted, caused to be transmitted, and aided and abetted the transmission and attempted transmission by means of wire or radio communications in interstate commerce from Ohio to Kentucky, certain writings, signs, signals, pictures or sounds, that is, State Unemployment Insurance claims for fictitious employees purportedly laid off by fictitious employers, on the following dates, each for the purpose of executing and attempting to execute

9

said scheme and artifice to defraud, each wire or radio communication constituting a separate count of this indictment:

| COUNT | DATE | FICTITIOUS EMPLOYER NAME | FICTITIOUS EMPLOYEE NAME |
|---|---|---|---|
| 2 | 4/30/17 | Nash Landscaping | Terryce J. |
| 3 | 4/30/17 | Nash Landscaping | DeQuan C. |
| 4 | 5/7/2017 | Nash Landscaping | DeJuan P. |
| 5 | 8/28/2016 | P&S Landscaping * / JANATORIAL | Kimberly J. |
| 6 | 8/28/2016 | P&S Landscaping * / JANATORIAL | Brittany E. |
| 7 | 3/26/2017 | P&S Landscaping * / JANATORIAL | Lavidia S. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

\* *[initials]* 2/6/2018

COUNTS 8-10
(Mail Fraud 18 U.S.C. § 1341)

The Grand Jury further charges:

29. Paragraphs 1 through 9 of the General Allegations and paragraphs 10 through 26 of Count 1 are incorporated herein and realleged by reference.

30. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, defendant RONDA HITE, having devised and intending to devise any scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, and attempting to do so, knowingly caused, intended to cause any matter or thing to be

placed in any post office or authorized depository for mail to be delivered by the U.S. Postal Service and private or commercial interstate carriers, that is, debit cards associated with fictitious employees' bank accounts set up to receive fraudulently obtained unemployment insurance benefits sent on behalf of Metabank from a company located in Minnesota, to addresses located in the Northern District of Ohio, Eastern Division, and elsewhere, on or about the following dates, each for the purpose of executing and attempting to execute said scheme and artifice to defraud, each mailing constituting a separate count of this Indictment:

| COUNT | DATE | EMPLOYER | CLAIMANT | ADDRESS |
|---|---|---|---|---|
| 8 | 12/30/2015 | Kamitch Landscaping | Marquetta M. | 14311 Jenne Ave, Cleveland, OH |
| 9 | 7/24/2015 | Toni's Janitorial Services | Shawntee F. | 1408 Dill, South Euclid, OH |
| 10 | 7/24/2015 | Toni's Janitorial Services | Monique Dobson | 12121 Farringdon Ave, Cleveland, OH |

All in violation of Title 18, United States Code, Section 1341.

COUNT 11<br>(Mail Fraud 18 U.S.C. § 1341)

The Grand Jury further charges:

31. Paragraphs 1 through 9 of the General Allegations and paragraphs 10 through 26 of Count 1 are incorporated herein and realleged by reference.

32. On or about April 3, 2017, defendant TIFFANY JONES, having devised and intending to devise any scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, attempting to do so, knowingly caused, intended to cause, and aided and abetted the causing of any matter or thing to be placed in any post office or

authorized depository for mail to be delivered by the U.S. Postal Service, that is, debit cards associated with fictitious employees' bank accounts set up to receive fraudulently obtained unemployment insurance benefits and correspondence between the KDUI and fictitious employees of Nash Landscaping, from Alabama to an address located in the Northern District of Ohio, Eastern Division, for the purpose of executing and attempting to execute said scheme and artifice to defraud, all in violation of Title 18, United States Code, Sections 1341.

COUNT 12
(Aggravated Identity Theft 18 U.S.C. §§ 1028A(a)(1))

The Grand Jury further charges:

33.    Between in or about August 2015 and in or about May 2017, in the Northern District of Ohio, Eastern Division, defendant RONDA HITE, during and in relation to felony violations of Title 18, United States Code, Sections 1343 (Wire Fraud) and 1349 (Conspiracy to Commit Wire Fraud and Mail Fraud) knowingly transferred, possessed and used without lawful authority a means of identification of Triyana O., Brittany E., and Lavidia S. (real persons whose identities are known to the Grand Jury), knowing that said means of identification belonged to one or more other persons.

All in violation of Title 18, United States Code, Sections 1028A(a)(1).

COUNT 13
(Aggravated Identity Theft 18 U.S.C. §§ 1028A(a)(1))

The Grand Jury further charges:

34.    Between in or about August 2015 and in or about May 2017, in the Northern District of Ohio, Eastern Division, and elsewhere, defendant TIFFANY JONES, during and in relation to a felony violation of Title 18, United States Code, Section 1349 (Conspiracy to Commit Wire Fraud and Mail Fraud), knowingly transferred, possessed and used without lawful

authority a means of identification of Triyana O. and Brittany E. (real persons whose identities are known to the Grand Jury), knowing that said means of identification belonged to one or more other persons.

All in violation of Title 18, United States Code, Sections 1028A(a)(1).

A TRUE BILL.

Original Document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.